THE STATE EX REL. DISPATCH PRINTING COMPANY *v.*
MORROW COUNTY PROSECUTOR'S OFFICE ET AL.

[Cite as *State ex rel. Dispatch Printing Co. v. Morrow Cty. Prosecutor's Office,*
105 Ohio St.3d 172, 2005-Ohio-685.]

(No. 2005–0206—Submitted February 17, 2005—Decided February 24, 2005.)

PER CURIAM.

{¶ 1} In January 2005, relator, the Dispatch Printing Company ("Dispatch"), requested that respondent Morrow County Prosecuting Attorney Charles S. Howland provide it with a copy of the 911 tape relating to the homicides of Diana Cooper and Cameron Bateman. Howland permitted the Dispatch to listen to the 911 tape and offered to transcribe it, but refused to provide the Dispatch with a copy of the tape or allow the Dispatch to record it.

{¶ 2} On January 28, 2005, the Dispatch filed this action under the Ohio Public Records Act, R.C. 149.43, to compel respondents, Howland, the Morrow County Prosecutor's office, and Morrow County, to *immediately* produce a copy of the requested 911 tape. The Dispatch also moved for a peremptory writ and requested its costs and expenses, including attorney fees. On February 16, 2005, respondents filed an answer admitting the pertinent facts. In its motion, the Dispatch states, "Given the time sensitivity of this matter, it is requested that the relief be granted forthwith."

{¶ 3} This cause is now before us for our S.Ct.Prac.R. X(5) determination.

S.Ct.Prac.R. X(5): Standard of Review

{¶ 4} We must now determine whether dismissal, an alternative writ, or a peremptory writ is appropriate. S.Ct.Prac.R. X(5); *State ex rel. Consumers' Counsel v. Pub. Util. Comm.,* 102 Ohio St.3d 301, 2004-Ohio-2894, 809 N.E.2d 1146, ¶ 9. The Dispatch requests a peremptory writ of mandamus. "[I]f the pertinent facts are uncontroverted and it appears beyond doubt that [the relator] is entitled to the requested writ, we will issue a peremptory writ of mandamus." *State ex rel. Highlander v. Rudduck,* 103 Ohio St.3d 370, 2004-Ohio-4952, 816 N.E.2d 213, ¶ 8.

## Application of Standard to Mandamus Claim

{¶ 5} The Dispatch is entitled to the requested writ. "Nine-one-one tapes in general * * * are public records which are not exempt from disclosure and must be immediately released upon request." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 379, 662 N.E.2d 334; see, also, *State ex rel. Beacon Journal Publishing Co. v. Maurer* (2001), 91 Ohio St.3d 54, 57, 741 N.E.2d 511.

{¶ 6} In *Cincinnati Enquirer,* we reasoned as follows in holding that all 911 tapes are public records subject to immediate release upon request:

{¶ 7} "Basic 911 systems * * * are systems 'in which a caller provides information on the nature of and location of an emergency, and the personnel receiving the call must determine the appropriate emergency service provider to respond at that location.' R.C. 4931.40(B). * * * 911 operators simply compile information and do not investigate. The 911 tapes are not made in order to preserve evidence for criminal prosecution. Nine-one-one calls that are received * * * are always initiated by the callers. * * *

{¶ 8} "From the foregoing, it is evident that 911 tapes are not prepared by attorneys or other law enforcement officials. Instead, 911 calls are routinely recorded without any specific investigatory purpose in mind. There is no expectation of privacy when a person makes a 911 call. Instead, there is an expectation that the information provided will be recorded and disclosed to the public. Moreover, because 911 calls generally precede offense or incident form reports completed by the police, they are even further removed from the initiation of the criminal investigation than the form reports themselves.

{¶ 9} "The moment the tapes were made as a result of the calls (in these cases—and in all other 911 call cases) to the 911 number, the tapes became public records. * * * Thus, any inquiry as to the release of records should have been immediately at an end, and the tapes should have been, and should now and henceforth always be, released.

{¶ 10} "The particular content of the 911 tapes is irrelevant. * * *

{¶ 11} "In addition, the fact that the tapes in question subsequently came into the possession and/or control of a prosecutor, other law enforcement officials, or even the grand jury has no significance. Once clothed with the public records cloak, the records cannot be defrocked of their status." Id., 75 Ohio St.3d at 377–378, 662 N.E.2d 334.

{¶ 12} Respondents argue that because they permitted the Dispatch to listen to the 911 tape and offered to transcribe the tape, they satisfied their duty under R.C. 149.43. But respondents ignore R.C. 149.43(B)(2), which authorizes the

person requesting the public record to choose to have the record duplicated in the same medium that the public office keeps it:

{¶ 13} *"If any person chooses to obtain a copy of a public record in accordance with division (B)(1) of this section, the public office or person responsible for the public record shall permit that person to choose to have the public record duplicated* upon paper, *upon the same medium upon which the public office or person responsible for the public record keeps it,* or upon any other medium upon which the public office or person responsible for the public record determines that it reasonably can be duplicated as an integral part of the normal operations of the public office or person responsible for the public record. When the person seeking the copy makes a choice under this division, the public office or person responsible for the public record shall provide a copy of it in accordance with the choice made by the person seeking the copy." (Emphasis added.)

{¶ 14} Because R.C. 149.43(B)(2) is unambiguous, we must apply it as written. See, e.g., *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23. Respondents concede that they keep the requested record in audiotape format and that despite the Dispatch's requesting a copy of the tape in this format, respondents refused to release copies of the tape and did not allow the Dispatch to copy it. Under R.C. 149.43(B)(2), they had a duty to provide the Dispatch with a copy of the 911 tape in that same format.

{¶ 15} Issuing a writ in this case is consistent with precedent. See *Cincinnati Enquirer* and *State ex rel. Slagle v. Rogers,* 103 Ohio St.3d 89, 2004-Ohio-4354, 814 N.E.2d 55, ¶ 16–17. In *Slagle,* we cited *Cincinnati Enquirer* and held that a person requesting a copy of an audiotape of a trial-court proceeding was not limited to a transcribed version of the tape:

{¶ 16} "As to Slagle's claim that he is entitled to have the *State v. Call* audiotape, he alleged in his complaint that he needed a copy of the audiotape of the suppression hearing in order to prepare for trial. Although Judge Rogers agrees that the recording should be made available for reasonable inspection, he argues that Slagle should not be allowed to have the tape copied at cost under R.C. 149.43(B)(1). Instead, he maintains that a party to the action is limited to a transcribed version of the tape, to be ordered from the court reporter for the fee fixed by the court.

{¶ 17} "We disagree with this position. In *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 662 N.E.2d 334, we held that tapes of 911 calls were public records and were subject to release under the Ohio Public Records Act. *In this case, Slagle is not asking to have the tape transcribed or to have a transcript of the tape copied for him—he is only requesting a copy of the audiotape. Under these circumstances, he is entitled to the copy at cost."* (Emphasis added.)

{¶ 18} Similarly, the Dispatch is entitled to a copy of the 911 tape at cost. Moreover, because 911 tapes "must be immediately released upon request," we grant an *immediate* peremptory writ. *Cincinnati Enquirer*, 75 Ohio St.3d at 379, 662 N.E.2d 334.

## Attorney Fees

{¶ 19} The Dispatch is also entitled to attorney fees. It has established a sufficient public benefit, and respondents failed to comply with the records requests for invalid reasons. *Cincinnati Enquirer*, 75 Ohio St.3d at 379, 662 N.E.2d 334. We order the Dispatch's counsel to submit a bill and documentation of evidence in support of its request for attorney fees, in accordance with the guidelines in DR 2–106.

Writ granted.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., concurs separately.

---

**PFEIFER, J., concurring.**

{¶ 20} I concur in the decision of the majority. The law is clear. However, as I wrote in *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 662 N.E.2d 334, the General Assembly should consider changing the law. Id. at 380–381, 662 N.E.2d 334 (Pfeifer, J., concurring). The public's right to scrutinize the workings of the government should be balanced against an individual citizen's right to privacy. A person should be able to summon the help of police officers or firefighters without having his plea broadcast on the evening news. A transcript of a 911 call would convey the necessary information without transforming a personal tragedy into a public spectacle.

---

Zeiger, Tigges, Little & Lindsmith, L.L.P., John W. Zeiger, and Marion H. Little Jr., for relator.

Charles S. Howland, Morrow County Prosecuting Attorney, for respondents.