The State ex rel. Toledo Blade Company *v.* Ohio
Bureau of Workers' Compensation et al.

[Cite as *State ex rel. Toledo Blade Co. v. Ohio Bur. of Workers'
Comp.,* 106 Ohio St.3d 113, 2005-Ohio-3549.]

(No. 2005–0867—Submitted July 5, 2005—Decided July 13, 2005.)

Alice Robie Resnick, Acting C.J.

{¶ 1} This is an action for a writ of mandamus to compel a state agency, its administrator, and two limited-liability companies organized to receive state-agency contributions to provide access to public records concerning certain coins that the agency owns.

{¶ 2} Respondent James Conrad, the former administrator of respondent Ohio Bureau of Workers' Compensation, managed the bureau and performed certain duties, including exercising investment powers vested in him in accordance with the investment objectives, policies, and criteria established by the nine members of the workers' compensation oversight commission. R.C. 4121.121(B)(7) and 4121.12(A).

{¶ 3} Respondent Capital Coin Fund Limited ("Capital I") was organized in 1998, and respondent Capital Coin Fund Limited II ("Capital II") was organized in 2001, to facilitate the bureau's investment in rare coins. Capital I and Capital II are limited-liability companies engaged principally in buying and selling rare coins.

{¶ 4} Beginning in 1998 and continuing until May 2005, Conrad authorized the bureau to invest in rare coins through these companies by using the State Insurance Fund's surplus and reserve. Capital I was organized with an initial contribution of $25,000,000 from the bureau and contributions from other organizers amounting to only $10,000. In sum, the bureau has contributed at least $50,000,000 to these companies, and under the terms of the operating agreement between the coin funds and the bureau, has an ownership interest of at least 80 percent in them. The bureau is the sole investor in the companies other than their organizer-managers.

{¶ 5} During this time, coins purchased by Capital I and Capital II on behalf of or for the account of the bureau were held by the companies or by dealers or other custodians designated by the companies; prior to May 2005, the bureau did not hold the coins. The dealers and other custodians would sell coins on behalf of or for the account of the bureau, either returning the proceeds less a fee or commission or investing the proceeds in other coins or investments.

{¶ 6} Capital I and Capital II purportedly kept records regarding the purchase, possession, and sale of coins and other transactions by or on behalf of the bureau. The companies' operating agreement provides that the bureau is entitled, at all times during reasonable business hours, to inspect the companies' books and to "have on demand true and full information of all things affecting" the companies.

{¶ 7} On May 9, 2005, following widespread public disclosure of the existence of the bureau's coin investments, Conrad announced that the bureau would liquidate the investments and terminate its relationship with Capital I and Capital II.[1]

{¶ 8} Relator, the Toledo Blade Company ("Blade"), is an operating division of Block Communications, Inc., and is principally engaged in the publication of a newspaper of general circulation.

{¶ 9} On March 23, 2005, the Blade requested that the bureau provide access to records regarding the bureau's relationship with Capital I and Capital II and the bureau's investment in coins. On April 28, 2005, the bureau provided the Blade with access to reports of audits conducted for the bureau of inventories of coins in which the bureau had an interest or that were purchased with bureau funds and held by Capital I, Capital II, or third-party custodians designated by these companies. The bureau, however, initially redacted these audit reports, concealing the identities of specific coins.

{¶ 10} On April 26, 2005, the Blade requested that the bureau provide access to records of purchase and sale transactions involving coins in which the bureau had an interest or that were purchased with bureau funds. The request included records of each transaction from 1998 to the present, identifying the purchaser, seller, coins purchased and sold, and sale price. The bureau advised the Blade that these records were in the possession of Capital I and Capital II and that the bureau would request the companies to supply copies of these records to the Blade. The Blade did not receive these records.

{¶ 11} On May 11, 2005, the Blade filed a complaint for a writ of mandamus against respondents: the bureau, its administrator, Capital I, and Capital II. The

---

1. Conrad has since resigned as administrator of the bureau and has been replaced by Tina Kielmeyer. Under Civ.R. 25(D)(1), as made applicable to this case by S.Ct.Prac.R. X(2), Kielmeyer is automatically substituted for Conrad in this case.

Blade requests the writ to compel respondents to provide access to the requested records, including the bureau's unredacted audit reports of coin inventories and the companies' records documenting coin transactions involving coins in which the bureau had an interest. The Blade also requests an award of attorney fees. On June 16, 2005, respondents answered.

{¶ 12} In their answer, respondents assert that except for the transactional documents, they have now provided copies of the requested records to the Blade. They claim that they have provided the identity of the specific coins that they had previously deleted from audit reports and inventory records. Respondents further contend that the "[a]cquisition costs" within the requested transactional documents, which they have not released, "constitute trade secrets and may affect the ability of the Funds to recoup their investments."

{¶ 13} This case is now before the court for its S.Ct.Prac.R. X(5) determination.[2]

{¶ 14} Pursuant to S.Ct.Prac.R. X(5), we must now determine whether dismissal, an alternative writ, or a peremptory writ is appropriate. *State ex rel. Dispatch Printing Co. v. Morrow Cty. Prosecutor's Office*, 105 Ohio St.3d 172, 2005-Ohio-685, 824 N.E.2d 64, ¶ 4. Because it appears beyond doubt that the Blade is entitled to the requested extraordinary relief, a peremptory writ will be granted. *Dispatch Printing Co.*, 105 Ohio St.3d 172, 2005-Ohio-685, 824 N.E.2d 64, ¶ 4.

{¶ 15} Mandamus is the appropriate remedy to seek compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Cincinnati Enquirer v. Winkler*, 101 Ohio St.3d 382, 2004-Ohio-1581, 805 N.E.2d 1094, ¶ 4. And R.C. 149.43 " 'is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records.' " *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 7, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334.

{¶ 16} The Blade's mandamus claim for unredacted audit reports of coin-inventory records is moot because respondents have now provided these records. See *State ex rel. Cranford v. Cleveland*, 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 23, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781

---

2. In separate cases, a state senator and a different newspaper publishing company requested similar records from the bureau and its administrator. [*State ex rel.*] *Dann v. Ohio Bur. of Workers' Comp.*, case No. 2005–0913; *State ex rel. Dispatch Printing Co. v. Ohio Bur. of Workers' Comp.*, case No. 2005–0923. In *Dann*, however, the parties filed a joint application for dismissal without prejudice on June 22, 2005. In *Dispatch Printing Co.*, the Dispatch filed an application of dismissal on June 23, 2005.

N.E.2d 163, ¶ 8 (" 'In general, the provision of requested records to a relator in a public-records mandamus case renders the mandamus claim moot' ").

{¶ 17} The Blade also requests respondents' coin-transaction records. Respondents claim that these records are not subject to disclosure under R.C. 149.43, because they "are not records kept by a public office," and the "[a]cquisition costs within these [records] constitute trade secrets and may affect the ability of [respondents] to recoup their investments." For the following reasons, we hold that respondents' claims are meritless.

{¶ 18} The requested records meet the definition of "public record," which means "records kept by any public office." R.C. 149.43(A)(1). The bureau is a state agency, which is included in the definition of a public office. See R.C. 149.011(A) (" 'Public office' includes any state agency * * * or entity established by the laws of this state for the exercise of any function of government") and (B) (" 'State agency' includes every * * * bureau * * * or other organized body established by the constitution and laws of this state for the exercise of any function of state government"). The requested documents serve to "document the organization, functions, policies, decisions, procedures, operations, or other activities of the office" so as to constitute records for purposes of the Public Records Act. R.C. 149.011(G). The requested documents were created by or on behalf of the bureau and its administration in furtherance of the administrator's statutory authority under R.C. 4123.44 to "invest any of the surplus or reserve belonging to the state insurance fund." They document those investments.

{¶ 19} Records in the possession of Capital I and Capital II are also subject to disclosure under R.C. 149.43. These companies are public offices for purposes of the Public Records Act because they are entities "established by the laws of this state for the exercise of any function of government." Under R.C. 4123.44, the administrator of the bureau was authorized to invest certain bureau funds: the surplus or reserve belonging to the state insurance fund. These funds are invested, and all cash, securities, and other property are held "in the name of the bureau." R.C. 4121.121(B)(7). Moreover, the coin companies were capitalized almost entirely by, and indeed owe their very existence to, money furnished by the bureau through the State Insurance Fund.

{¶ 20} Even assuming that these limited-liability companies are not public offices as defined in R.C. 149.011(A), the records in the possession of Capital I and Capital II are still subject to disclosure under R.C. 149.43. R.C. 149.43(C) permits a mandamus action against either "a public office or the person responsible for the public record" to compel compliance with the Public Records Act. This provision "manifests an intent to afford access to public records, even when a private entity is responsible for the records." *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 39, 550 N.E.2d 464. "In order for a private entity to be

subject to R.C. 149.43, (1) it must prepare the records in order to carry out a public office's responsibilities, (2) the public office must be able to monitor the private entity's performance, and (3) the public office must have access to the records for this purpose." *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Krings* (2001), 93 Ohio St.3d 654, 657, 758 N.E.2d 1135.

{¶ 21} Capital I and Capital II maintain records in order to carry out the bureau's investment authority. The bureau can monitor the companies' performance and can inspect the companies' records and demand information in furtherance of their monitoring function. And it is has been reported that the bureau is now in control of Capital I and Capital II.

{¶ 22} The acquisition costs in the coin-transaction records do not constitute trade secrets, even if their disclosure would affect the ability of respondents to recoup their investments. In order for this information to constitute a trade secret exempt from disclosure under R.C. 149.43, it must appear to have been "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.C. 1333.61(D)(2). See, also, *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency* (2000), 88 Ohio St.3d 166, 172, 724 N.E.2d 411; *State ex rel. Fisher v. PRC Pub. Sector, Inc.* (1994), 99 Ohio App.3d 387, 394, 650 N.E.2d 945. Respondents do not allege that they made any effort toward maintaining the secrecy of this information.

{¶ 23} We recognize that in general, when a governmental body asserts that public records are exempt from disclosure and that assertion is challenged, an in camera inspection and further evidence and briefing are normally warranted. See, e.g., *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 31, 661 N.E.2d 180. Here, however, given the unique circumstances of this case, it appears beyond doubt that the requested records are public records subject to disclosure under R.C. 149.43. Therefore, a peremptory writ is appropriate. See, e.g., *Dispatch Printing Co.*, 105 Ohio St.3d 172, 2005-Ohio-685, 824 N.E.2d 64, ¶ 4.

{¶ 24} The Blade is also entitled to attorney fees it incurred in bringing this mandamus action. The public has an unquestioned financial interest in a state agency's and state administrator's investment of public funds, and so the Blade has established a public benefit. Cf. *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 53. In addition, respondents have failed to comply with these legitimate records requests for invalid reasons. See *Dispatch Printing Co.*, 105 Ohio St.3d 172, 2005-Ohio-685, 824 N.E.2d 64, ¶ 19. We order the Blade's counsel to submit a bill and documentation of evidence in support of its request for attorney fees, in accordance with the guidelines of DR 2–106.

{¶ 25} Therefore, based on the foregoing, we grant a peremptory writ of mandamus to compel respondents to provide access to the requested records.

Writ granted.

GORMAN, KARPINSKI and CORRIGAN, JJ., concur.

PFEIFER, J., concurs and writes separately.

BRYANT and GRADY, JJ., dissent.

THOMAS F. BRYANT, J., of the Third Appellate District, sitting for MOYER, C.J.

THOMAS J. GRADY, J., of the Second Appellate District, sitting for LUNDBERG STRATTON, J.

ROBERT H. GORMAN, J., of the First Appellate District, sitting for O'CONNOR, J.

DIANE KARPINSKI, J., of the Eighth Appellate District, sitting for O'DONNELL, J.

MICHAEL J. CORRIGAN, J., of the Eighth Appellate District, sitting for LANZINGER, J.

---

**PFEIFER, J., concurring.**

{¶ 26} From the outset, the Bureau of Workers' Compensation's "trade secret" argument seemed more a delaying tactic than a legitimate legal issue. I concur that the bureau's acquisition costs are not a trade secret under R.C. 1333.61(D)(2). Additionally, I would hold that the acquisition costs do not constitute a trade secret under R.C. 1333.61(D)(1), which requires that the information at issue "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by * * *, other persons who can obtain economic value from its disclosure or use."

{¶ 27} How much the bureau paid for coins is irrelevant to how much they can be sold for. The market is the market. That is especially true in situations where, as here, the items sold are rare and unique. Also, any willing buyer would expect that since Ohio had an expert purchasing coins on the state's behalf, that expertise would allow the state to buy coins at bargain prices.

{¶ 28} Further, the state reportedly has hired Sotheby's to sell the coin inventory. Presumably, that firm's expertise will allow the state to know the value of what it owns. The state will be an informed seller, and buyers will therefore know that the eventual selloff will not be akin to a garage sale where someone sells a Rembrandt for five dollars. The state will know what it is selling and what it is worth. And with bureau assets of over $21 billion, according to its

2004 annual report, the state can afford to wait if it does not immediately get the price it seeks.

{¶ 29} Caveat emptor.

---

**GRADY, J., dissenting.**

{¶ 30} I would not issue a peremptory writ of mandamus but would instead issue an alternative writ for the following reasons.

{¶ 31} This original action is governed by S.Ct.Prac.R. X. Section 1 of that rule expressly provides that the provisions of R.C. Chapter 2731 ("Mandamus") are applicable. Section 2 states: "The Ohio Rules of Civil Procedure shall supplement these rules unless clearly inapplicable."

{¶ 32} R.C. 2731.06 provides that an alternative writ is required in mandamus actions instead of a peremptory writ unless "it is apparent that no valid excuse can be given for not" performing the act that the writ would command. The Ohio Bureau of Workers' Compensation cites and relies on R.C. 149.43(A)(1)(v), which exempts "[r]ecords the release of which is prohibited by state or federal law" from the requirements of the Public Records Act. R.C. 1333.61 et seq. prohibits release of trade secrets, which are therefore exempt from the requirements of the Act. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency* (2000), 88 Ohio St.3d 166, 172, 724 N.E.2d 411.

{¶ 33} The bureau asserts that the "transactional documents * * * contain trade secrets exempt from disclosure. Release of the trade secrets may affect the ability of the [coin] Funds to recoup their investments." How that may be is not explained, but the assertion does not set up a special matter that is subject to the more particular pleading requirements of Civ.R. 9, including what effort, if any, the bureau has undertaken to maintain the secrecy of the information. R.C. 1333.61(D)(2). Therefore, it is sufficient that the defense is "simple, concise, and direct," which it is. Civ.R. 8(E)(1).

{¶ 34} The bureau's assertion may have the facial appeal of a dead mackerel in the moonlight, but it does set up an issue of fact that "must be tried, and further proceedings thereon had, in the same manner as in civil actions." R.C. 2731.09. In order to find that the assertion is "no valid excuse," R.C. 2731.06, this court must assume a knowledge of the market in rare coins that it lacks. That assumption subjects the interests of contributing employers and injured employees to the risk of further possible losses, one that is not reasonably justified though the surrounding circumstances seem scandalous. The facts are best

sorted out by the further showings that an alternative writ of mandamus would require of the bureau.

BRYANT, J., concurs in the foregoing dissenting opinion.

_____

Fritz Byers, for relator.

Jim Petro, Attorney General, and Martin D. Susec, Assistant Attorney General, for respondents.