[Cite as *State ex rel. Ames v. Baker, Dublikar, Beck, Wiley & Mathews*, 2022-Ohio-171.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO ex rel.
BRIAN M. AMES,

       Relator,

     - v -

BAKER, DUBLIKAR, BECK,
WILEY & MATHEWS, et al.,

       Respondents.

CASE NO. 2021-P-0046

Original Action for Writ of Mandamus

## P E R   C U R I A M
## O P I N I O N

Decided: January 24, 2022
Judgment: Amended petition dismissed

*Brian M. Ames*, pro se, 2632 Ranfield Road, Mogadore, OH 44260 (Relator)

*James F. Mathews* and *Andrea K. Ziarko*, Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH 44720 (For Respondent Baker, Dublikar, Beck, Wiley & Mathews).

*Robert J. Gehring* and *Saba Nishat Alam*, Buechner, Haffer, Meyers & Koenig Co., LPA, 221 East Fourth Street, Suite 2300, Cincinnati, OH 45202 (For Respondent Ohio Township Association Risk Management Authority).

*Donald Patrick Kasson* and *Thomas Neil Spyker*, Reminger Co., LPA, 200 Civic Center Drive, Suite 800, Columbus, OH 43215 (For Respondent Public Entity Risk Services of Ohio).

PER CURIAM.

{¶1}    Relator, Brian M. Ames ("Mr. Ames"), requests a writ of mandamus ordering respondents, Baker, Dublikar, Beck, Wiley & Mathews ("Baker Dublikar"), Public Entity

Risk Services of Ohio ("PERSO"), and Ohio Township Association Risk Management Authority ("OTARMA") (collectively, "respondents"), to provide unredacted copies of invoices for legal services rendered by Baker Dublikar on behalf of its client, Rootstown Township ("Rootstown"). Mr. Ames asserts the invoices are public records subject to disclosure without redaction. Mr. Ames also seeks an award of statutory damages in the amount of $1,000, attorney fees, and costs.

{¶2} A review of Mr. Ames's complaint reveals he has been provided with the legal invoices he sought, which were properly redacted per the attorney-client privilege exception. Furthermore, Mr. Ames cannot establish claims for statutory damages, attorney fees, and/or costs. Since Mr. Ames cannot establish any claim upon which relief may be granted, respondents' motions to dismiss are granted.

## Substantive and Procedural Facts

{¶3} Since 2017, Mr. Ames has been involved in several cases against Rootstown in which he alleged violations of R.C. 121.22, the Open Meetings Act. Some of those cases are still pending.

{¶4} In his petition for a writ of mandamus against respondents, Mr. Ames alleges that he submitted a public record request pursuant to R.C. 149.43 to one Rootstown trustee and a Baker Dublikar attorney for invoices for the legal services the law firm provided to Rootstown that related to those cases (three cases and six appeals – four in the Eleventh District Court of Appeals and two before the Supreme Court of Ohio). He argues that because Baker Dublikar sent the invoices to PERSO, a third-party, and never sent them to Rootstown or OTARMA, the attorney-client privilege does not apply and the invoices should not have been redacted.

2

{¶5} OTARMA is a self-insurance pool that provides Ohio townships with an alternative to traditional property and casualty insurance, including Rootstown in Portage County. A self-insurance pool is a not-for-profit association of members who join together for the purpose of sharing losses and spreading risks. OTARMA contracts with PERSO to administer insurance claims made against townships that are members of OTARMA. The billing records requested by Mr. Ames were issued by Baker Dublikar to PERSO and related to the Ames-Rootstown litigation.

{¶6} Baker Dublikar provided the requested invoices with the narrative portions of the bills "redacted as provided by law." The law firm asserted attorney-client privilege and provided Mr. Ames with the nonexempt portions of the bills, i.e., the general title of the matter being handled, the dates the services were performed, and the hours, rate, and money charged for the services.

{¶7} Mr. Ames sent a second public records request to Baker Dublikar, which, in turn, sent a reply stating, "We have responded to your public records request for copies of the invoices for legal services provided to the Rootstown Township Board of Trustees, to the extent required under Ohio law. We are ethically unable to provide copies without redacting all privileged communications, without an express waiver from [Rootstown], which we do not have."

{¶8} After filing his original petition with this court, Mr. Ames sent a third public records request "to counsel for each respondent." Mr. Ames did not attach a copy of that request to his later-filed amended petition, nor did he reference it in his attached "Affidavit of Verity." OTARMA asserts Mr. Ames never submitted a public records request to it until after OTARMA filed its motion to dismiss the original petition on the basis that no records

3

had ever been requested by Mr. Ames. PERSO asserts the petition fails to allege that Mr. Ames made a request of PERSO – only to PERSO's counsel.

{¶9} Mr. Ames then filed an amended petition, requesting an order requiring respondents to "promptly prepare the public records requested and provide unredacted copies to him as required by R.C. 149.43(B)." More specifically, he contends that the invoices at issue are public records under the "quasi-agency test" and that the attorney-client privilege is limited to discussions in executive sessions held pursuant to R.C. 121.22(G)(3) and (G)(5). Mr. Ames also requests statutory damages, attorney fees, and costs.

{¶10} Respondents each filed a motion to dismiss in response to the amended petition. Respondents argue the redacted, narrative portions of the legal invoices fall under the protection of the attorney-client privilege since they are descriptions of legal services between a lawyer and a client. In addition, respondents assert they are not public entities required to comply with public records requests pursuant to R.C. 149.43. Finally, OTARMA and PERSO contend Mr. Ames's action is moot since he was provided with the redacted legal invoices he requested.

**The Elements of a Mandamus Action**

{¶11} "Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. The basic purpose of a writ of mandamus is to require a public official to complete a specific act which he has a legal obligation to perform. *State ex rel. Cunningham v. Lucci*, 11th Dist. Lake No. 2006-L-052, 2006-Ohio-4666, ¶ 9.

4

Case No. 2021-P-0046

{¶12} To be entitled to a writ of mandamus, the relator in such an action must be able to satisfy the following three elements: (1) the relator must have a clear legal right to have the public official perform a particular act; (2) the official must have a clear legal duty to do the act; and (3) the relator does not have another adequate remedy at law. *State ex rel. Greene v. Enright*, 63 Ohio St.3d 729, 731, 590 N.E.2d 1257 (1992).

{¶13} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. Thus, the relator does not have to show the lack of an adequate legal remedy to prevail. *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 41.

{¶14} The relator must establish entitlement to the requested extraordinary relief by clear and convincing evidence. *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 14 ("*Pietrangelo II*"), quoting *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16. Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶15} The requester must request records before bringing the mandamus action, and the "'request must be specific and particularly describe what it is that is being sought.'"

5

*State ex rel. Essi v. Lakewood*, 2018-Ohio-5027, 126 N.E.3d 254, ¶ 26 (8th Dist.), quoting *State ex rel. Zauderer v. Joseph*, 62 Ohio App.3d 752, 756, 577 N.E.2d 444 (10th Dist.1989).

{¶16} R.C. 149.43(A)(1)(v) excludes "[r]ecords the release of which is prohibited by state or federal law" from the definition of "public record." Any exception to disclosure under the Public Records Act is strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. *State ex rel. Pietrangelo v. Avon Lake*, 146 Ohio St.3d 292, 2016-Ohio-2974, 55 N.E.3d 1091, ¶ 9 ("*Pietrangelo I*"), quoting *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus.

{¶17} "'A court can dismiss a mandamus action under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted if, after all factual allegations of the complaint are presumed true and all reasonable inferences are made in relator's favor, it appears beyond doubt that he can prove no set of facts entitling him to the requested writ of mandamus.'" *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 2010-Ohio-2671, 931 N.E.2d 110, ¶ 6, quoting *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 9. *Accord State ex rel. Nyamusevya v. Hawkins*, 165 Ohio St.3d 22, 2021-Ohio-1122, 175 N.E.3d 1122, ¶ 10.

### Public Records and Private Entities

{¶18} All three respondents argue that they are not public entities and therefore not subject to either the mandates of R.C. 149.43 or a mandamus action.

{¶19} However, it has been determined that when a public office contracts with a private entity to perform government work, the private entity can be a "person responsible

6

for public records" sufficient to compel compliance with the Public Records Act, even if not a "public office." *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 43 (5th Dist.) *quoting State ex rel. Toledo Blade Co. v. Ohio Bur. of Workers' Comp.*, 106 Ohio St.3d 113, 2005-Ohio-3549, 832 N.E.2d 711, ¶ 20. Accordingly, the private entity may be subject to R.C. 149.43 under the quasi-agency theory when (1) a private entity prepares records in order to carry out a public office's responsibilities; (2) the public office is able to monitor the private entity's performance; and (3) the public office has access to the records for this purpose. *Id.*

{¶20} For instance, in *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 684 N.E.2d 1222 (1997), the Supreme Court of Ohio found that the confidentiality provision in a settlement agreement entered into by a public office was a public record even though it was in the possession of the public office's private attorney. *Id.* at 137.

{¶21} R.C. 149.43(C) permits a mandamus action to be brought against either "the public office or the person responsible for the public record" to compel compliance with the Public Records Act. This provision "'manifests an intent to afford access to public records, even when a private entity is responsible for the records.'" *Toledo Blade Co.* at ¶ 20, quoting *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990) (determining a private entity may be required to produce public records).

{¶22} Legal invoices in this context, although in the possession of a private entity, are public records. *See State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 163 Ohio St.3d 304, 2021-Ohio-1176, 170 N.E.3d 19, ¶ 14. Even if the public office does not

7

"create" or "receive" the records, the records may nonetheless be "under the jurisdiction" of the public office, R.C. 149.011(G).  *Armatas* at ¶ 14.

{¶23}  In *Armatas*, the Supreme Court of Ohio recently considered whether the "quasi-agency test" requires a public office to produce legal invoices based on its delegation of its public duty to a private entity.  *Id.* at ¶ 15.

{¶24}  The court concluded that the legal invoices the appellant requested from the township that were in OTARMA's possession (which they received from PERSO) related to a public duty and satisfied the quasi-agency test, thus demonstrating the legal invoice was a public record.  *Id.* at ¶ 22.  The court explained:

{¶25}  "The township is 'a body politic and corporate' that 'may sue and be sued, plead and be impleaded.'  R.C. 503.01.  The prosecution and defense of such lawsuits involves a public duty of the township and its trustees.  In connection with such lawsuits, the township and its trustees must take whatever action is necessary and appropriate to protect the public interest—including hiring and supervising attorneys.  *See id.*  Although the township here has delegated that duty by becoming a member of OTARMA, the township still occupies one side of the bilateral formal relationship between an attorney and client—a relationship that persists even when an insurer hires an attorney and exercises substantial control over the course of litigation.   *See* Prof.Cond.R. 1.8(f) (preserving the client's rights and protecting the client's interest when the attorney is compensated by a third party)."  *Id.* at ¶ 20.

{¶26}  Thus, contrary to respondents' arguments that they are not "public entities," legal invoices in this context, whether they are in the possession of Rootstown, Baker Dublikar, OTARMA, or PERSO, pass the quasi-agency test and are public records.

**Attorney-Client Privilege**

{¶27} All three respondents argue the legal invoices were properly redacted since they are descriptions of legal services, i.e., communications between a lawyer and a client and are protected by the attorney-client privilege.

{¶28} Mr. Ames contends that the attorney-client privilege belonging to a public body is governed by R.C. 121.22(G)(3) and (G)(5) and that it does not extend to public records such as legal invoices.

{¶29} Pursuant to R.C. 121.22(G), "the members of a public body may hold an executive session * * * for the sole purpose of the consideration of any of the following matters:

{¶30} "(3) Conferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action;

{¶31} "* * *

{¶32} "(5) Matters required to be kept confidential by federal law or regulation or state statutes * * *."

{¶33} Thus, contrary to Mr. Ames's argument, this statute concerns when a public body may hold an executive session under the Open Meetings Act pursuant to R.C. 121.22, not the response to a Public Records Act request for unredacted legal invoices pertaining to a township's litigation. *See Carver v. Deerfield Twp.*, 139 Ohio App.3d 64, 74, 742 N.E.2d 1182 (11th Dist.2000) ("These sections enumerate instances where the members of a public body may hold a limited purpose executive session"). *See also Ames v. Rootstown Twp. Bd. of Trustees*, 2019-Ohio-5412, 151 N.E.3d 37, ¶ 42 (11th Dist.).

9

{¶34} In *Carver*, we explained that "[t]he attorney-client privilege also covers communications between government clients and their attorneys pertaining to the attorney's legal advice." *Id.* at 76., quoting *State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 383, 700 N.E.2d 12, 16. Further, R.C. 149.43(A)(1)(v) exempts "[r]ecords the release of which is prohibited by state or federal law" from the definition of "public record."

{¶35} As the Supreme Court of Ohio explained in *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524:

{¶36} "'The attorney-client privilege, which covers records of communications between attorneys and their government clients pertaining to the attorneys' legal advice, is a state law prohibiting release of those records.' *State ex rel. Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 542, 721 N.E.2d 1044. In Ohio, the attorney-client privilege is governed both by statute, R.C. 2317.02(A), which provides a testimonial privilege, and by common law, which broadly protects against any dissemination of information obtained in the confidential attorney-client relationship. *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 24." *Id.* at ¶ 27.

{¶37} "While a simple invoice ordinarily is not privileged," respondents are correct in their assertions that "itemized legal bills necessarily reveal confidential information and thus fall within the attorney-client privilege." *Id.* at ¶ 28., quoting *Hewes v. Langston*, 853 So.2d 1237, ¶ 45 (Miss.2003). Further, "a demand for such documents constitutes an 'unjustified intrusion into the attorney-client relationship.'" *Id.*, quoting *In re Horn*, 976 F.2d 1314, 1317-1318 (9th Cir.1992).

10

{¶38} Thus, it is well established that "[t]o the extent that narrative portions of attorney-fee statements are 'descriptions of legal services performed by counsel for a client,' they are protected by the attorney-client privilege because they 'represent communications from the attorney to the client about matters for which the attorney has been retained by the client.'" *Id.*, quoting *State ex rel. Alley v. Couchois,* 2d Dist. Miami No. 94-CA-30, 1995 WL 559973, *4 (Sept. 20, 1995).

{¶39} In sum, the Supreme Court of Ohio has determined that the narrative portions of itemized attorney-fee billing statements containing descriptions of legal services performed by counsel are protected by the attorney-client privilege. *Pietrangelo I, supra*, at ¶ 10, citing *Dawson* at ¶ 28-29; *see also State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 36.

{¶40} Other information on the billing statements, e.g., the general title of the matter being handled, the dates the services were performed, and the hours, rate, and dollar amount charged for the services, is considered nonexempt and must be disclosed. *Id.*, citing *State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975, ¶ 15.

{¶41} A review of the legal invoices Baker Dublikar provided to Mr. Ames reveals that he received the legal invoices he requested and that the descriptions of the legal services provided by counsel were appropriately redacted. Further, the mere fact that the billing for legal services was sent directly to the claims administrator for the insurance carrier does not automatically waive the privilege. In this case Baker Dublikar's clients are Rootstown and OTARMA.

Case No. 2021-P-0046

{¶42} As the Supreme Court of Ohio remarked in *Armatas,* "the township still occupies one side of the bilateral formal relationship between an attorney and client—*a relationship that persists even when an insurer hires an attorney and exercises substantial control over the course of litigation.*" (Emphasis added.) *Id.* at ¶ 20. Comment 12A to Prof.Cond.R. 1.8 further explains that "[w]hether employed or retained by an insurance company, insurance defense counsel owes the insured the same duties to avoid conflicts, keep confidences, exercise independent judgment, and communicate as a lawyer owes any other client."

{¶43} Quite simply, "'an attorney does not become any less of an attorney by virtue of state agency employment.'" *State ex rel. ESPN, Inc. v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 38, quoting *State ex rel. Leslie v. Ohio Hous. Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 29. And the attorney-client privilege applies to agents working on behalf of legal counsel. *Id.* The privilege is the client's and only the client's to waive. *Leslie* at ¶ 21 (except under circumstances not relevant here, only the client can waive the privilege).

{¶44} Mr. Ames has failed to establish any claim upon which relief may be granted; thus, respondents' motions to dismiss are well-taken.

### Statutory Damages, Attorney Fees, and Costs

{¶45} Even if a relator does not prevail on a mandamus claim, it is still possible for him to receive an award of statutory damages. *State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 13.

{¶46} Under R.C. 149.43(C)(2), the "requester shall be entitled to recover" statutory damages if (1) he submits a written request "by hand delivery, electronic

12

submission, or certified mail," (2) the request "fairly describes the public record or class of public records," and (3) "a court determines that the public office or the person responsible for public records failed to comply with an obligation" imposed by R.C. 149.43(B). Statutory damages accrue "at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply * * *, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars." *Id.*; *State ex rel. Kesterson v. Kent State University*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 21.

{¶47} A review of both the original petition and the amended petition reveals that Baker Dublikar, on its own behalf and as counsel for Rootstown, promptly responded to Mr. Ames's records request, supplying him with all the requested records. Mr. Ames submitted his request to Rootstown and Baker Dublikar on Sunday, April 11, 2021. Baker Dublikar responded with the requested records on Friday, April 16, 2021. On Monday, April 19, 2021, Mr. Ames made a second request to Baker Dublikar, who responded on Wednesday, April 28, 2021. Mr. Ames filed the instant action on May 5, 2021, after receiving the records he requested.

{¶48} As previously noted, OTARMA asserts in its motion to dismiss directed to Mr. Ames' amended petition that Mr. Ames never submitted a public records request to it until after OTARMA filed its motion to dismiss the original petition on the basis that no records had ever been requested by Mr. Ames. PERSO asserts the petition fails to allege that Mr. Ames made a request of PERSO – only to PERSO's counsel.

{¶49} Baker Dublikar's response provided everything requested, redacted only the exempt information of the invoices, i.e., the narrative descriptions, notified Mr. Ames of the redactions, and made redactions plainly visible, pursuant to R.C. 149.43(B)(1):

{¶50} "Upon request and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Subject to division (B)(8) of this section, upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time. *If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt. When making that public record available for public inspection or copying that public record, the public office or the person responsible for the public record shall notify the requester of any redaction or make the redaction plainly visible.* A redaction shall be deemed a denial of a request to inspect or copy the redacted information, except if federal or state law authorizes or requires a public office to make the redaction." (Emphasis added.)

{¶51} Mr. Ames' amended petition establishes he received all the requested invoices promptly after the request was made, and he has set forth no contrary allegation that respondents "failed to comply with an obligation," apart from his assertion that he did not receive information to which he is not entitled.

14

{¶52} Inasmuch as we have determined as a matter of law that Mr. Ames is not entitled to receive the unredacted attorney fees invoices and that respondents did not fail to comply with obligations under R.C. 149.43, we determine Mr. Ames has failed to state a claim for statutory damages, attorney fees, or costs.

{¶53} In conclusion, there are no claims upon which relief can be granted since Mr. Ames received the legal invoices he requested, which were properly redacted under the attorney-client privilege. Further, Mr. Ames cannot establish claims for statutory damages, attorney fees, or costs. Thus, it appears beyond doubt that he can prove no set of facts entitling him to the requested writ of mandamus, and we grant respondents' motions to dismiss.

{¶54} Mr. Ames's amended petition for a writ of mandamus is dismissed.

THOMAS R. WRIGHT, P.J., CYNTHIA WESTCOTT RICE, J., MARY JANE TRAPP, J., concur.