THE STATE EX REL. PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE
*v.* BOARD OF TRUSTEES OF OHIO STATE UNIVERSITY.

[Cite as *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903.]

(No. 2005–0612—Submitted November 8, 2005—Decided March 15, 2006.)

---

Per Curiam.

{¶ 1} This is an original action for a writ of mandamus to compel the board of trustees of the Ohio State University ("OSU") to release certain photographic and videotaped records generated by OSU in connection with its research on spinal-cord injuries. Because we conclude that the intellectual-property exception to the Public Records Act supports OSU's refusal to release the records, we deny the writ.

## Facts

{¶ 2} Relator, Physicians Committee for Responsible Medicine ("PCRM"), is a nonprofit, health-advocacy organization that works to promote what it views as ethical and effective medical research.

{¶ 3} The College of Medicine at OSU conducts scientific research on spinal-cord injuries and the treatment of those injuries. Laboratory animals, including mice and rats, are used in that research.

{¶ 4} In April 2005, PCRM filed a complaint seeking a writ of mandamus to compel OSU to allow PCRM to see and copy photographs and other video and audio records related to the use and treatment of laboratory animals in the spinal-cord research programs conducted at OSU's College of Medicine. PCRM also requested an award of attorney fees.

## Oral Argument

{¶ 5} PCRM asks the court to schedule an oral argument in the case. Yet the parties' briefs are sufficient to resolve the issues raised, and the case does not involve a substantial constitutional issue, a conflict among courts of appeals, or complex issues of law or fact. *State ex rel. Woods v. Oak Hill Community Med. Ctr., Inc.* (2001), 91 Ohio St.3d 459, 460, 746 N.E.2d 1108. No oral argument is necessary.

## The Standard for Mandamus Relief in Public–Records Cases

{¶ 6} Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Beacon Journal Publishing Co. v. Akron,* 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 23. In a public-records mandamus claim, " 'R.C. 149.43 [the Public Records Act] is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records.' " (Brackets sic.) *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 7, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334.

{¶ 7} Before we reach the public-records issue, however, two preliminary issues must first be addressed.

The Motion to Strike: Problems with PCRM's Brief

{¶ 8} OSU urges us to strike the merit brief filed by PCRM, arguing that it violates Rules VI and VIII of this court's Rules of Practice. OSU's motion rightly explains that PCRM's merit brief (1) does not list the names of all attorneys involved in the case on the cover of the brief, as S.Ct.Prac.R. VIII(2)(F) requires, (2) does not contain a table of contents or a table of authorities, as S.Ct.Prac.R. VI(2)(B)(1) and (2) require, (3) does not contain an appendix with a copy of the relevant statutes, as S.Ct.Prac.R. VI(2)(B)(5)(f) requires, (4) does not include page references to the factual record in the statement of facts, as S.Ct.Prac.R. VI(2)(B)(3) requires, and (5) does not include one or more argument headings that could be used by the court as a syllabus in an opinion, as S.Ct.Prac.R. VI(2)(B)(4) requires.

{¶ 9} PCRM has replied to the motion and cites "coordination difficulties between local and out-of-state counsel" as the reason for the brief's deficiencies. PCRM contends that the errors were inadvertent and expresses its willingness to file a corrected brief. The motion to strike the brief should be denied, according to PCRM, because its missteps have not prejudiced OSU's ability to file a responsive brief or hindered the court's ability to decide the case.

{¶ 10} We conclude that OSU's motion to strike the brief should be denied. Despite the admitted and serious deficiencies in PCRM's brief, that brief does provide the court with a statement of facts and the relevant legal arguments on the public-records issue in question. The problems in the brief do not appear to have prevented OSU from understanding PCRM's legal position or hindered OSU's efforts to respond to PCRM's arguments.

{¶ 11} To be sure, we have in some cases insisted on strict compliance with the Rules of Practice. See, e.g., *Ohio Consumers' Counsel v. Pub. Util. Comm.*, 105 Ohio St.3d 1211, 2005-Ohio-1023, 823 N.E.2d 872 (dismissing appeal because the notice of appeal did not include the certificate of filing required by S.Ct.Prac.R. XIV(2)(C)(2)); *Ohio Heritage Dev. Co. v. Portage Cty. Bd. of Elections* (2000), 90 Ohio St.3d 1436, 736 N.E.2d 476 (striking a party's brief for failure to comply with the service requirement in S.Ct.Prac.R. XIV(2)(A)); *Drake v. Bucher* (1966), 5 Ohio St.2d 37, 34 O.O.2d 53, 213 N.E.2d 182 (dismissing appeal because appellant's brief did not contain a proper cover page, a table of authorities, the relevant statute in an appendix, page references to the factual record, proper argument headings, or a statement of the questions presented).

{¶ 12} Even so, a second round of briefs in this case would delay a ruling on the merits and would unnecessarily increase the cost of resolving the parties' dispute. The PCRM brief, while certainly not a model for others to follow, provides a coherent legal argument on the public-records issue and explains why PCRM believes that Ohio law supports its request for a writ of mandamus.

{¶ 13} The omission of page references to the relevant portions of the record that support the brief's factual assertions is most troubling. Appellate attorneys should not expect the court "to peruse the record without the help of pinpoint citations" to the record. *Day v. N. Indiana Pub. Serv. Corp.* (C.A.7, 1999), 164 F.3d 382, 384 (imposing a public reprimand and a $500 fine on an attorney for repeated noncompliance with court rules). In the absence of the page references that S.Ct.Prac.R. VI(2)(B)(3) requires, the court is forced to spend much more time hunting through the record to confirm even the most minor factual details to decide the case and prepare an opinion. That burden ought to fall on the parties rather than the court, for the parties are presumably familiar with the record and should be able to readily identify in their briefs where each relevant fact can be verified.

{¶ 14} In the end, PCRM and its lawyers are admonished for their carelessness in preparing their brief for this court, but the brief need not be stricken. Because we can complete our work in this case using the briefs before us, and because OSU was able to respond to the defective brief despite its shortcomings, PCRM need not refile, and its noncompliant brief will not be stricken. PCRM and its counsel are advised that similar violations in future cases could lead to sanctions.

The Motion for Summary Judgment: PCRM's Status as a Foreign Corporation

{¶ 15} OSU also urges the court to grant summary judgment in its favor, citing PCRM's failure to register with the Ohio Secretary of State as a foreign (non-Ohio) nonprofit corporation. The argument turns on R.C. 1703.27, which bars any foreign nonprofit corporation from exercising its "corporate privileges in this state in a continual course of transactions" without first securing a certificate to do so from the Ohio Secretary of State. R.C. 1703.29(A) adds that "no foreign corporation which should have obtained such license shall maintain any action in any court" in the state.

{¶ 16} PCRM is a nonprofit corporation licensed in the state of Delaware, and an affidavit from the Ohio Secretary of State's office confirms that PCRM has not registered as a foreign corporation in Ohio. PCRM is a tax-exempt corporation with offices in Washington, D.C. and California. It does not maintain an office in Ohio, neither owns nor leases real estate here, and has no employees in the state.

{¶ 17} Consistent with our court rules, OSU's motion for summary judgment is denied. The Rules of Practice that govern original actions filed in this court do not permit parties to file motions for summary judgment. *State ex rel. Watkins v. Eighth Dist. Court of Appeals* (1998), 82 Ohio St.3d 532, 534, 696 N.E.2d 1079, fn. 1. See, also, *State ex rel. Findlay Publishing Co. v. Schroeder* (1996), 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (denying a request for summary judgment in an

original action "because Civ.R. 56 motions are clearly inapplicable under S.Ct. Prac.R. X(5)").

{¶ 18} Although a summary judgment motion is an inappropriate vehicle for raising concerns about PCRM's corporate status, OSU certainly can—and has—raised that same argument in its merit brief. Even so, we find the argument that PCRM must register as a foreign corporation to be unconvincing and therefore reject OSU's contention that PCRM lacks the authority to pursue this mandamus action in Ohio.

{¶ 19} R.C. 1703.27 calls for foreign nonprofit corporations to register in Ohio before exercising "corporate privileges in this state in a continual course of transactions." We see no evidence that PCRM has tried to exercise corporate privileges in Ohio in a continuous and substantial way.

{¶ 20} To be sure, the record before us shows that PCRM has members in and seeks charitable contributions from residents of all 50 states and several foreign countries, and up to three percent of PCRM's members are Ohio residents. Yet PCRM has no office or employees in Ohio, and any financial transactions in the state are rare and sporadic, according to an affidavit provided to the court by PCRM's executive director and general counsel. PCRM has engaged in just one other Ohio-focused advocacy effort beyond its current attempt to bring attention to OSU's use of laboratory animals in spinal-cord research, and nearly all of its sporadic advocacy in Ohio has been conducted from its Washington, D.C. office "except for a single trip by three PCRM employees to Ohio," according to the group's executive director.

{¶ 21} "It is well-recognized * * * that a foreign corporation transacts business within a state when 'it has entered the state by its agents and is there engaged in carrying on and transacting through them some substantial part of its ordinary or customary business, usually continuous in the sense that it may be distinguished from merely casual, sporadic, or occasional transactions and isolated acts.'" *Auto Driveaway Co. v. Auto Logistics of Columbus* (S.D.Ohio 1999), 188 F.R.D. 262, 265, quoting *Dot Sys., Inc. v. Adams Robinson Ent., Inc.* (1990), 67 Ohio App.3d 475, 481, 587 N.E.2d 844. This court has similarly suggested that a foreign corporation's activities must be permanent, continuous, and regular to constitute "doing business" in Ohio. See *Perkins v. Benguet Consol. Mining Co.* (1952), 158 Ohio St. 145, 48 O.O. 87, 107 N.E.2d 203 (a company with a president who resided and maintained an office in Ohio and who kept office files, carried on correspondence, held directors' meetings, and drew and distributed salary checks on behalf of the company in Ohio was doing business in the state).

{¶ 22} PCRM's activities in Ohio are limited, and PCRM does not maintain any continuous business presence in the state. While a nonprofit corporation's fundraising activities and public advocacy in a state can constitute doing business

in that state, PCRM's activities in Ohio cannot be described as a substantial part of its ordinary business, given the small percentage of PCRM members who live in Ohio, and given that the current campaign focused on laboratory animals used at OSU is only the second Ohio-focused campaign that PCRM has untaken since obtaining its corporate charter in the state of Delaware in 1985. With no agents or employees based in the state, no real estate in Ohio, relatively few members living here and contributing to the organization, and infrequent visits by its employees or officers to the state, PCRM cannot be said to have "exercise[d] its corporate privileges in this state in a continual course of transactions." R.C. 1703.27.

{¶ 23} We therefore reject OSU's argument that PCRM must secure a corporate license from the Ohio Secretary of State before pursuing this case.

## The Merits of the Public-Records Claim

{¶ 24} On the merits, then, PCRM seeks video records of mice and rats involved in spinal-cord research at OSU, video records documenting OSU's current and developing surgical techniques for producing spinal-cord injuries, records documenting the procedures used by OSU in its spinal-cord-injury training program, and training videos used by OSU to develop and demonstrate techniques for assessing rodents' neurological recovery from spinal-cord injuries.

{¶ 25} OSU contends that the requested records are "intellectual property records" that need not be provided to PCRM under the Public Records Act, R.C. 149.43. That statute does exempt intellectual-property records from the definition of "public record," see R.C. 149.43(A)(1)(m), and defines an "intellectual property record" as "a record, other than a financial or administrative record, that is produced or collected by or for faculty or staff of a state institution of higher learning in the conduct of or as a result of study or research on an educational, commercial, scientific, artistic, technical, or scholarly issue, regardless of whether the study or research was sponsored by the institution alone or in conjunction with a governmental body or private concern, and that has not been publicly released, published, or patented." R.C. 149.43(A)(5).

{¶ 26} PCRM argues that the latter phrase in that definition defeats OSU's claim for exemption, as the records it seeks have already been publicly released by OSU and therefore cannot be intellectual-property records exempt from the Public Records Act. OSU contends—and PCRM does not dispute—that the documents satisfy the other elements of the definition of intellectual-property records, for they are not financial or administrative records, they were produced or collected by or for the faculty or staff at OSU, and they were produced or collected "in the conduct of or as a result of study or research on an educational, commercial, scientific, artistic, technical, or scholarly issue." R.C. 149.43(A)(5).

{¶ 27} The parties therefore agree that PCRM's case turns on whether the records that it seeks have been "publicly released, published, or patented." R.C. 149.43(A)(5).

{¶ 28} Any exceptions to disclosure under the Public Records Act must be strictly construed against the public-records custodian, and a records custodian bears the burden of establishing the applicability of an exception. *State ex rel. McGowan v. Cuyahoga Metro. Hous. Auth.* (1997), 78 Ohio St.3d 518, 519, 678 N.E.2d 1388. The parties do not question that basic precept.

{¶ 29} As for the intellectual-property exception in particular, the court has had few occasions to address its scope. In *State ex rel. Besser v. Ohio State Univ.* (2000), 89 Ohio St.3d 396, 732 N.E.2d 373, we held that the intellectual-property exception to the Public Records Act did not apply to certain financial records at Ohio State University, and in *State ex rel. Rea v. Ohio Dept. of Edn.* (1998), 81 Ohio St.3d 527, 692 N.E.2d 596, we ruled that the exception did not cover previously administered Ohio 12th-grade proficiency tests and vocational examinations because those records had been publicly released. That latter case turned on the factual question of whether the records had or had not been placed into the public domain, and the same factual inquiry must be conducted here.

{¶ 30} OSU acknowledges that it has lent some of the records to scientists and research trainees. An affidavit in the record from Dr. Michael S. Beattie, a professor and Chair of the Department of Neuroscience in the College of Medicine and Public Health at OSU, states, however, that any of the withheld records lent to others have been provided solely to "trusted scientific collaborators from known and reputable laboratories who will use the data to improve spinal cord injury research methodologies." Those to whom the records have been lent are required to sign nondisclosure agreements barring them from copying the records or showing them to others and to guarantee that the records will be maintained in a designated laboratory.

{¶ 31} OSU has also shown a small number of the records to scientists at medical conferences, but Dr. Beattie attests that the conferences have been closed to the general public, and the records "have never been shown in classes for OSU students." OSU argues in its brief that the limited disclosure of the records "is integral and directly related to the conduct of the research itself, because it is done for training, validation or collaboration."

{¶ 32} At OSU, the records are kept in the College of Medicine's laboratories, and, according to Dr. Beattie, they are in "secure designated cabinets within a locked office for video data records, or within laboratory notebooks and storage cases for stored digital images." Laboratory access, he testifies, is "strictly restricted to laboratory members only." And while OSU researchers have described some of their research techniques in a published article, see Basso,

Beattie, and Bresnahan, A Sensitive and Reliable Locomotor Rating Scale for Open Field Testing in Rats, 12 Journal of Neurotrauma (1995) 1, the records that PCRM seeks in this case have not been published.

{¶ 33} On this record, we cannot find that the records PCRM seeks have been "publicly released, published, or patented." R.C. 149.43(A)(5). The information is not available to members of the public now and does not appear to have been released to them at any point in the past. Unlike in *Rea*, where vocational examinations and proficiency tests had been disclosed to thousands of public school students, teachers, and administrators all over the state, see *Rea*, 81 Ohio St.3d at 533, 692 N.E.2d 596, only a small number of the records at issue in this case have been shown or lent to small groups of scientists and researchers, and only under controlled circumstances. During each training session, no more than 16 scientists and researchers from outside OSU have regular access to any of the records in OSU's spinal-cord-research training program, and that access is limited. All trainees must sign nondisclosure agreements. In addition, any other medical professionals who have seen portions of the video records have done so only at closed meetings not open to the general public.

{¶ 34} As Dr. Beattie testified at a deposition, OSU's goal in sharing select intellectual-property records with scientists and researchers at other institutions through its training program "is to transfer technology on spinal cord injury experimental techniques to a select group of researchers who intend to use these techniques to further the advancement of spinal cord injury research." By doing so, however, OSU has not publicly disclosed its proprietary research data for the public's unrestricted use. It has evidently sought to train others in research techniques, but has kept tight controls on the records at issue in this case.

{¶ 35} The limited sharing of the records with other researchers assists both OSU and those other scientists in their efforts to learn more about surgical procedures. That limited sharing does not mean that the records have been "publicly released." They remain the intellectual property of OSU, and none of OSU's actions suggest that it intends to give up its right to the scientific and financial benefits that might redound to OSU from its research in the treatment of spinal-cord injuries.

{¶ 36} For the reasons explained above, PCRM's request for a writ of mandamus and for attorney fees is denied. OSU has met its burden of establishing that the records at issue are "intellectual property records" as that term is defined in R.C. 149.43(A)(5), and PCRM is therefore not entitled to them under the Public Records Act.

Writ denied.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Gittes & Schulte, Frederick M. Gittes, and Kathaleen B. Schulte; Daniel Kinburn and Karen Boyd Williams, for relator.

Jim Petro, Attorney General; Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford, David E. Northrop, and Julie L. Atchison, for respondent.