[Cite as *State ex rel. Am. Ctr. for Economic Equality v. Jackson*, 2015-Ohio-4981.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102298**

## S/O EX REL. AMERICAN CENTER FOR ECONOMIC EQUALITY

PLAINTIFF-APPELLANT

vs.

## THE HONORABLE FRANK JACKSON, ET AL.

DEFENDANTS-APPELLEES

### JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-809917

**BEFORE:** McCormack, J., E.A. Gallagher, P.J., and Stewart, J.
**RELEASED AND JOURNALIZED:** December 3, 2015

**ATTORNEY FOR APPELLANT**

Gilbert W.R. Rucker, III
135 Pine Avenue, S.E.
Suite 203
Warren, OH   44481


**ATTORNEYS FOR APPELLEES**

**For the Honorable Frank Jackson**

Barbara A. Langhenry
Law Director
City of Cleveland

By:   Jonathan P. Barra
Assistant Law Director
601 Lakeside Ave., Suite 106
Cleveland, OH   44114


**For National Economic Research Associates, Inc.**

John R. Mitchell
Carolyn M. Cole
Thompson Hine, L.L.P.
3900 Key Center
127 Public Square
Cleveland, OH   44114-1291

Terry W. Posey, Jr.
Thompson Hine, L.L.P.
10050 Innovation Dr.
Suite 400
Miamisburg, OH   45342

TIM McCORMACK, J.:

{¶1} Relator-appellant, American Center for Economic Equality ("ACEE"), appeals from the trial court's judgment denying its petition for writ of mandamus. For the following reasons, we affirm in part and reverse in part.

Procedural History and Substantive Facts

{¶2} In August 2010, the city of Cleveland ("City") entered into a contract with National Economic Research Associates, Inc. ("NERA") to "develop, conduct, and interpret a current disparity study, including recommending and implementing accepted improvements to the City Office of Equal Opportunity's business enterprise program." The purpose of the disparity study was to determine whether there was sufficient evidence of discrimination to include race-conscious and gender-conscious goals in the City's procurement, construction, and other contracts, and if so, to assist the City in implementing such goals in its business enterprise program. NERA is a private, for-profit company that is incorporated in California, doing business in Texas, maintains its main office in New York, and provides services for clients in North America, Asia Pacific, and Europe. It provides professional consulting services in economics, finance, and quantitative principles.

{¶3} On April 2, 2013, pursuant to R.C. 149.43, the Ohio Public Records Act, ACEE requested from the City the production of any and all public records pertaining to certain members of Mayor Frank G. Jackson's staff and records generated or created from January 1, 2008, through April 2, 2013, pertaining to NERA and the disparity study

prepared by NERA. On July 1, 2013, ACEE filed a petition for writ of mandamus. On July 2, 2013, the City produced approximately 20,000 pages of documents in response to ACEE's public records request. On December 27, 2013, NERA filed a motion to intervene, which the trial court granted.

{¶4} NERA opposed ACEE's petition for a writ, stating that the City produced all documents in its possession that were responsive to ACEE's public records request and not subject to privilege. It further stated that, with the exception of one confidential document it provided to the City, the remaining documents were protected from disclosure because NERA, a private entity, possessed the documents and because the requested documents were trade secrets exempt from disclosure. The City also opposed ACEE's petition for writ, stating that it produced all documents in its possession that were responsive to ACEE's public records request and not subject to privilege. The City stated that the one document in its possession was withheld pursuant to NERA's instructions.

{¶5} In March 2014, ACEE filed a motion for in camera inspection of documents in NERA's possession or documents NERA claimed were protected trade secrets. The documents requested for in camera inspection included the following:

> Any and all records pertaining to the studies and surveys referenced on pages 266-267 of the document titled The State of Minority- and Women-Owned Business Enterprise: Evidence from Cleveland Prepared for the City of Cleveland that was issued on December 24, 2012, * * * [including] but [ ] not limited to:
>
> — the survey questionnaire mailed to 9,094 businesses;
> — the 685 responses received;

— the list of businesses that received the questionnaire;
— the list of 685 respondents;
— the study or discussion guide prepared for use in the group interviews described on page 283 of the NERA report;
— a list of the 110 minority and female business owners who participated in the group interviews; and
— any transcripts, video and/or audio tapes of the group interviews.

**{¶6}** The trial court granted, in part, ACEE's motion for in camera inspection. The court ordered the City to produce the one document withheld from its July 2013 disclosure, based upon NERA's instructions, for an in camera inspection.[1]

**{¶7}** Following a review of this document, which was a list of names with email addresses, the court denied ACEE's writ. The trial court determined that the single document — the list of names — is a trade secret as defined in R.C. 1333.61 and is not subject to disclosure. The court further found that the City has fulfilled its obligations regarding ACEE's public records request, having produced all other documents in its possession relating to the records request. Finally, the trial court found that NERA is not a public office pursuant to R.C. 149.43, nor is it a functional equivalent, agent, or quasi-agent of the City. The court therefore held that the records retained by NERA are not public records under R.C. 149.43 and ACEE is not entitled to their disclosure.

---

[1] The October 2014 order also granted NERA's motion for protective order regarding the deposition of its senior vice president, Jon Wainwright, and the City's motion for protective order regarding the deposition of Natoya Walker-Minor. The court's order with respect to the individual depositions is not addressed on appeal.

**{¶8}** ACEE appealed the trial court's denial of the writ, raising two assignments of error.

## Assignments of Error

I.   The trial court erred in finding the documents held by the third-party contractor NERA were "trade secrets" and not subject to disclosure under R.C. 149.43, the Public Records Act, [and] was contrary to law and against the manifest weight of the evidence and constituted an abuse of discretion.

II.   The trial court erred in its finding that the records requested were not subject to the Public Records Act when the court limited its cursory analysis to whether NERA was a "functional equivalent" of the City of Cleveland and [in its] failing to consider the ramifications of the contractual obligations between the City and NERA, which constituted an abuse of discretion and a judgment contrary to the manifest weight of the evidence.

## Standard of Review

**{¶9}** The proper remedy to enforce a public records request is an original action in mandamus. R.C. 149.43(C); *Salemi v. Cleveland Metroparks*, 8th Dist. Cuyahoga No. 100761, 2014-Ohio-3914, ¶ 10; *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174. In order to obtain relief, ACEE must demonstrate that it possesses a clear, legal right to the requested records and that the respondent possesses a clear, legal duty to provide the requested records. *Id.*

**{¶10}** The purpose of R.C. 149.43, Ohio's Public Records Act, "is to expose government activity to public scrutiny, which is absolutely essential to the proper working

of a democracy." *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro*, 80 Ohio St.3d 261, 264, 685 N.E.2d 1223 (1997). R.C. 149.43 is therefore intended to be liberally construed "to ensure that governmental records be open and made available to the public * * * subject to only a few very limited and narrow exceptions." *State ex rel. Williams v. Cleveland*, 64 Ohio St.3d 544, 549, 597 N.E.2d 147 (1992). The relator, however, must establish its entitlement to mandamus by clear and convincing evidence. *Salemi* at ¶ 11. Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶11}** We review a trial court's denial of a writ of mandamus for an abuse of discretion. *Cleveland v. Highland Hills*, 8th Dist. Cuyahoga No. 64605, 1993 Ohio App. LEXIS 3187, * 6 (June 24, 1993), citing *State, ex rel. Ney v. Niehaus*, 33 Ohio St.3d 118, 515 N.E.2d 914 (1987); *Ogle v. Hocking Cty. Sheriff*, 4th Dist. Hocking No. 11AP13, 2012-Ohio-1768, ¶ 14.

Public Records Act

**{¶12}** In its second assignment of error,[2] ACEE claims that the trial court erred in denying the writ regarding the documents that are in NERA's possession, where the court

---

[2] We address appellant's assignments of error out of order.

found that NERA was not a functional equivalent of a public office and therefore not subject to the Public Records Act. ACEE essentially argues that the trial court erred in applying the functional-equivalency analysis because NERA contracted with the City to perform a public purpose and, therefore, the records requested concerning the contract are public records. ACEE also argues that, under the functional-equivalency analysis, the trial court failed to accord the proper weight to the City's contract with NERA.

{¶13} Under the Public Records Act, R.C. 149.43, public offices must release public records upon request. A public record is defined as "any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units." R.C. 149.43(A)(1). For purposes of the Public Records Act, a public office is defined as "any state agency, public institution, political subdivision, or any other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." R.C. 149.011(A).

{¶14} In some instances, a private entity may qualify as a "public institution" under R.C. 149.011(A), and thus, a "public office," for purposes of R.C. 149.43. The Ohio Supreme Court has held that a private entity may be the "functional equivalent" of a public office where the court analyzes the following factors: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government or to avoid the requirements of the Public Records Act. *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193,

paragraph two of the syllabus. This functional-equivalency analysis "begins with the presumption that private entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office." *Id.* at ¶ 26. Courts must apply the functional-equivalency analysis on a case-by-case basis, "examining all pertinent factors with no single factor being dispositive." *Id.* at ¶ 23, citing *Ry. Labor Executives Assn. v. Consol. Rail Corp.*, 580 F.Supp. 777, 778 (D.C. 1984) ("All relevant factors are to be considered cumulatively, with no single factor being essential or conclusive.").

{¶15} Ohio courts have also held that when a public office contracts with a private entity to perform government work, the private entity can be a "person responsible for public records" sufficient to compel compliance with the Public Records Act, even if not a "public office." *State ex rel. Toledo Blade Co. v. Bur. of Workers' Comp.*, 106 Ohio St.3d 113, 2005-Ohio-3549, 832 N.E.2d 711, ¶ 20; R.C. 149.43(C). Accordingly, under this "quasi-agency" theory, the private entity may be subject to R.C. 149.43 where (1) the private entity prepares records in order to carry out a public office's responsibilities; (2) the public office is able to monitor the private entity's performance; and (3) the public office has access to the records for this purpose. *State ex rel. Carr v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 36, citing *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990); *see also State ex rel. ACLU of Ohio v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553.

{¶16} In permitting mandamus against "*either* the governmental unit *or* the person responsible for a public record * * * [, the statute] manifests an intent to afford access to public records, even when a private entity is responsible for the records." *Mazzaro* at 39. The public's right of access to public records, includes "any material on which a public office could or did rely, * * * regardless of where they are physically located, or in whose possession they may be." *Mazzaro* at 40.

{¶17} A public office, therefore, cannot escape its responsibility for public records simply by contracting with a private entity. *See State ex rel. Gannett Satellite Info. Network v. Shirey*, 78 Ohio St.3d 400, 403, 678 N.E.2d 557 (1997). Thus, even without a finding that the private entity is a public office, or a functional equivalent, its records might be subject to disclosure under R.C. 149.43. *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.,* 65 Ohio St.3d 258, 263, 602 N.E.2d 1159 (1992).

{¶18} Here, ACEE contends, in part, that the trial court erred in only applying the functional-equivalency test. We find, however, that the court analyzed and rejected both the functional-equivalency test espoused in *Oriana House,* 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193*,* and the quasi-agency theory espoused in *Mazzaro*, 49 Ohio St.3d 37, 550 N.E.2d 464, stating that "NERA is not a public office pursuant to R.C. 149.43. Further, it is not the functional equivalent of a governmental agency, nor is it an agent or quasi-agent of respondent * * *." Accordingly, we will review ACEE's assignment of error under both analyses.

A. Functional Equivalent

**{¶19}** As previously stated, the applicable test for determining when a private entity is a public office subject to the Public Records Act is the functional-equivalency analysis. *See State ex rel. Bell v. Brooks*, 130 Ohio St.3d 87, 2011-Ohio-4897, 955 N.E.2d 987, ¶ 18, citing *Oriana House,* 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193. "By homing in on the functional realities of a particular contractual arrangement, the functional-equivalency test provides greater protection against unintended public disclosures while affording a more suitable framework for determining the extent to which an entity has actually assumed the role of a governmental body." *State ex rel. Repository v. Nova Behavioral Health, Inc.*, 112 Ohio St.3d 338, 2006-Ohio-6713, 859 N.E.2d 936, ¶ 24.

**{¶20}** In applying the factors of the functional-equivalency test, we find that ACEE has not established by clear and convincing evidence that NERA is the functional equivalent of a public office for purposes of the Public Records Act. First, NERA has not performed a historically governmental function. A "governmental function" traditionally includes such tasks as providing police, fire, and emergency services, public education, and a free public library system, preserving the peace, regulating the use and maintenance of roads, operating jails, regulating traffic, and collecting refuse. *See* R.C. 2744.01(C)(2). NERA, however, is a private consulting firm that was contracted to conduct a disparity study. Disparity studies are typically performed by private consultants. *DynaLantic Corp. v. United States DOD*, 885 F.Supp.2d 237, 261 (D.D.C. 2012). And where a private entity is performing a function that is traditionally

performed by private entities, it is not performing a "historically governmental function."

*Brooks* at ¶ 22 (concluding that providing insurance is traditionally the role of a private entity and therefore not a government function).

{¶21} Second, the extent of government involvement or regulation is minimal. ACEE claims that certain provisions of the contract between the parties establish NERA as a functional equivalent of the City: (1) the City shall "supplement its regularly employed staff" in order to develop and conduct the disparity study; (2) NERA shall submit monthly reports to the City; and (3) all "records, documents, materials, and working papers prepared as part of the work under this agreement" shall become the property of the City. These provisions, however, do not establish that the City made decisions for, controlled, or supervised the day-to-day operations of NERA. *Nova Behavioral Health, Inc.* at ¶ 34 (contractual provisions and monitoring requirements constituted only the control necessary to ensure government funds were properly used and did not exhibit control of day-to-day operations sufficient to establish functional equivalency). Moreover, NERA maintains its own facilities and staff, who are not City employees. NERA is therefore an independent, private entity, and the City's limited involvement with NERA by virtue of its contract does not change NERA's status. *Id.* at ¶ 35, 36.

{¶22} Third, we find that there is no evidence that NERA was created by the City or created as a means to avoid the requirements of the Public Records Act. NERA is a private, for-profit California corporation, doing business in Texas, that provides

consulting services in economics, finance, and quantitative principles nationwide. According to NERA, the organization was established in 1961, decades before its contract with the City.

{¶23} Finally, the level of government funding obtained by NERA for this disparity study is minimal. Jon Wainwright, Senior Vice President of NERA, provided that NERA generates approximately $125 million in annual revenue, the large majority of which is obtained from private entities. According to the City's contract with NERA, the City agreed to pay an amount not to exceed $757,602. The revenue generated from its contract with the City was therefore less than 1 percent of its total revenue.

{¶24} Considering the totality of the above factors, we find that NERA is not a functional equivalent of a public office sufficient to compel compliance with the Public Records Act.

## B. Person Responsible for Public Records

{¶25} Having found that NERA is not the functional equivalent of a public office, we must now determine whether NERA is the "person responsible for public records" under R.C. 149.43(C). ACEE argues that it is entitled to the records requested under this "quasi-agency" theory.

{¶26} As previously stated, under this theory, the private entity may be subject to R.C. 149.43 where (1) the private entity prepares records in order to carry out a public office's responsibilities; (2) the public office is able to monitor the private entity's performance; and (3) the public office has access to the records for this purpose. *Carr*,

112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, at ¶ 36, citing *Mazzaro*, 49 Ohio

St.3d at 39, 550 N.E.2d 464.

{¶27} Moreover, the Ohio Supreme Court has also determined that regardless of

whether the relator has established that the private consultant acted as the City's agent or

that the relationship between the City and the consultant satisfied the three-prong test in

*Mazzaro, supra*, where a public official contracted with a private entity for a public

purpose, the records are public records subject to disclosure under R.C. 149.43.   *Shirey*,

78 Ohio St.3d at 403, 678 N.E.2d 557.

{¶28} In *Shirey*, the city of Cincinnati contracted with a private consultant to assist

the city in hiring a safety director.   The private consultant agreed to provide the city

manager with a list of final applicants, but all applications and resumes would become the

sole property of the private consultant and would not be subject to public review.   In

response to a reporter's public records request for all records regarding the applicants for

safety director, the city denied the request based upon the fact that the records were in the

possession of the private contractor.

{¶29} The Ohio Supreme Court determined that the requested documents (which

included applicant resumes and supporting documents of the safety director applicants)

were subject to disclosure under R.C. 149.43.   *Shirey* at 403-404.   The court noted that

had the city undertaken the task without hiring the private consultant, the records at issue

would have been subject to disclosure.   *Id.*, quoting *Forum Publishing Co. v. Fargo*, 391

N.W.2d 169, 172 (N.D.1986).   In concluding that the city could not attempt to

circumvent R.C. 149.43 by contracting with a private company, the court stated that "to hold otherwise, governmental entities could conceal information concerning the hiring of important public officials from the public by merely delegating this uniquely public duty to a private entity." *Id.* at 404; *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 661 N.E.2d 187 (1996) (where a public official contracted with a private entity for a public purpose — to assist in the filling of a municipal position — the documents in the private entity's possession are no less a public record simply because they were in the possession of the private entity, regardless of whether an agency relationship had been established or the entity had been established as the "person responsible for public records").

{¶30} Here, the City hired NERA to conduct a disparity study and recommend and implement "accepted improvements to the City Office of Equal Opportunity's business enterprise program." The purpose of the disparity study was to determine whether there was sufficient evidence of discrimination to include race-conscious and gender-conscious goals in the City's procurement, construction, and other contracts.

{¶31} Without question, the task of ensuring the equal opportunities of all women and minorities in government contracts serves an important public purpose. The eradication of discrimination in public procurement and construction contracts benefits the community as a whole and is directly related to the functions of the government. To that end, NERA has prepared its records in order to carry out the City's public responsibilities.

**{¶32}** Additionally, according to the terms of the contract, NERA agreed to submit monthly reports to the City on its progress, and the City agreed to assist NERA by providing office and working facilities. Article V of the contract also provided that upon cancellation, "all records, documents, materials and working papers prepared as part of the work under [the] agreement shall become the property of the City," as well as any additional materials that "would be necessary * * * to maintain continuity in progress of the work by another consultant."

**{¶33}** In light of the above, it is evident that the City was able to monitor NERA's performance and it had access to the records for this purpose. Indeed, the record shows that the City had produced approximately 20,000 pages of documents in its possession in response to ACEE's public records request. Accordingly, the requested records are subject to disclosure under the Public Records Act insofar as R.C. 149.43 is applicable to these records. *See Carr*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, at ¶ 39 (the fact that the parties are subject to the Public Records Act does not prevent a party from raising an exception to R.C. 149.43).

**{¶34}** The trial court's determination that NERA is not an agent or quasi-agent of the City is reversed. ACEE's second assignment of error is sustained in part.

Trade Secrets

**{¶35}** Having found that NERA is a "person responsible for public records," we must determine whether any exceptions to the required release of public records apply. Both NERA and the City claim that the requested documents are "trade secrets" and therefore not subject to disclosure.

**{¶36}** The Ohio Public Records Act provides several exceptions to the required release of public records. One such exception includes the disclosure of "[r]ecords the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). The Ohio Supreme Court has determined that "a public office's own trade secret, in its possession, is a record 'the release of which is prohibited by state or federal law.'" *State ex rel. Luken v. Corp. for Findlay Mkt. of Cincinnati*, 135 Ohio St.3d 416, 2013-Ohio-1532, 988 N.E.2d 546, ¶ 17, citing *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 721 N.E.2d 1044, (2000).

**{¶37}** "Trade secret" is defined as

information, including * * * any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to

maintain its secrecy.

R.C. 1333.61(D) (The Ohio Uniform Trade Secrets Act).

**{¶38}** In adopting this court's analysis of a trade secret claim, the Ohio Supreme Court determined that the following factors should be considered in determining whether a trade secret claim meets the statutory definition as codified in R.C. 1333.61(D):

(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 524-525, 687 N.E.2d 661 (1997), citing *Pyromatics, Inc. v. Petruziello*, 7 Ohio App.3d 131, 134-135, 454 N.E.2d 588 (8th Dist.1983).

**{¶39}** The entity claiming trade-secret status "bears the burden to identify and demonstrate that the material is included in categories of protected information under the statute and additionally must take some active steps to maintain its secrecy." *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 399-400, 732 N.E.2d 373 (2000), citing *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 181, 707 N.E.2d 853 (1999).

**{¶40}** In this case, in response to ACEE's public records request, the City produced approximately 20,000 documents relating to its contract with NERA. ACEE claims, however, that a significant number of records from that request that pertain to "the studies and surveys referenced on pages 266-267 of the document titled The State of Minority- and Women-Owned Business Enterprise: Evidence from Cleveland Prepared

for the City of Cleveland that was issued on December 24, 2012" were not produced. According to ACEE, these particular documents include: the survey; the responses received; the list of businesses that received the questionnaire; the list of respondents; the study or discussion guide prepared for use in group interviews; a list of the minority and female business owners who participated in the group interviews; and any transcripts, video and/or audio tapes of the group interviews. The City stated that the one document in its possession that had not been produced (a list of names and addresses) was a trade secret and not subject to disclosure. NERA claimed that the remaining documents still requested by ACEE are in NERA's possession, not the City's, and they are exempt from disclosure because they are trade secrets.

{¶41} ACEE requested an in camera inspection of the above listed items. The trial court, however, allowed inspection of only one document — the list of names and email addresses that the City possessed — and found it to be a trade secret. The trial court determined that NERA was not a functional equivalent of the City and, therefore, any documents in its possession were not subject to disclosure under the Public Records Act. Based upon this finding, the court did not review the documents in NERA's possession, and thus, it made no determination regarding the applicability of the trade secret exemption to R.C. 149.43 to these documents. We therefore review the trial court's determination concerning the single list of names and email addresses the court found to be a trade secret.

**{¶42}** NERA identified this list as proprietary information obtained as a result of the disparity study it was contracted to perform for the City. In support of its contention that the list constitutes trade secrets, NERA submits the affidavit of Jon Wainwright, Senior Vice President of NERA. Wainwright provides that the information contained in this list is confidential and is not generally known or readily ascertainable to others outside of NERA. He states that he disclosed this information to the City "only for legitimate business purposes and communicated to the City that the City had to act with the utmost care to protect [the document's] confidentiality." He further provides that this information "has not been publicly released, published, or patented," because it is not published in their studies and is not made available to NERA's competitors.

**{¶43}** Wainwright stated this confidential information is available only to him, with the exception of NERA employees responsible for maintaining the company's computer and network infrastructure, three researchers in NERA's Austin office, and a secretary in New York. He stated that access to the confidential records "must be explicitly granted and approved by me." In addition, Wainwright states that NERA restricts access to, and disclosure of, NERA's confidential information by "physically securing its facilities and documents" and maintaining "password-protect[ed] computers and networks."

**{¶44}** According to Wainwright, NERA requires all employees, including temporary employees, to execute confidentiality agreements and nondisclosure agreements. The nondisclosure agreement states as follows:

[NERA's] competitive position depends upon its ability to maintain the confidentiality of the Confidential Information and Trade Secrets which were developed, compiled and acquired by [NERA] at its great effort and expense * * * any revealing, or using of any of the Confidential Information and Trade Secrets, other than in connection with [NERA's] business * * * will be highly detrimental to [NERA] and cause it to suffer loss of business and pecuniary damage * * * I agree that I will not * * * disseminate or disclose to any other person, organization, or entity Confidential Information or Trade Secrets [.]

These agreements also prohibit any terminated employee from leaving employment with any originals or copies of NERA's records.

{¶45} NERA's employee handbook describes the nature of its work as "highly confidential" and defines "confidential information" as

any and all information relating to any client or prospective client of the company, any and all information * * * relating to the company and the operation of its business, and/or any information subject to restriction on disclosure or which an employee knows or should have known is considered by the company or the company's client * * * to be confidential, sensitive, proprietary or a trade secret, or is not readily available to the public.

**{¶46}** Additionally, Wainwright submits that NERA has developed and refined its business for more than 24 years, invested a substantial amount of time, effort, and expense in developing its product and in developing an excellent reputation in the economic consulting industry, particularly with respect to disparity studies. He further states that it would take a significant amount of time, effort, and expense for others to duplicate what NERA has developed. He provides that NERA's reputation "allows it to successfully obtain contract awards from clients, even when its services sometimes command a premium compared to NERA's competitors."

**{¶47}** Finally, Wainwright provides that NERA's proprietary information has independent economic value, especially to its competitors, stating, "If NERA's competitors obtain access to these records, it would significantly reduce, or possibly even eliminate NERA's competitive advantage, since its competitors would gain precise knowledge of how NERA conducts its studies."

**{¶48}** In light of the above, we find that the trial court did not err in finding that the list of names and email addresses reviewed in camera constitutes a trade secret. The evidence sufficiently establishes that the list contains information that is not generally known to those outside the business; it derives independent economic value from not being generally known to the public; NERA expends substantial effort in guarding its secrecy; NERA has expended substantial time, effort, and expense in obtaining and developing the information; and the disclosure of this information would give a competitor a tremendous advantage in not having to expend the time, effort, and expense

to obtain the same information. ACEE is therefore not entitled to disclosure of the names and email addresses contained in this list, and ACEE's writ, as it pertains to this list, was properly denied.

{¶49} To the extent that ACEE's first assignment of error pertains to the trial court's finding that the single document in the City's possession is a trade secret, the assignment of error is overruled. Because we find, however, that NERA is, in fact, a "person responsible for public records" subject to R.C. 149.43, we remand the matter to the trial court for a determination as to whether the remaining requested documents in NERA's possession constitute trade secrets.

{¶50} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, P.J., and
MELODY J. STEWART, J., CONCUR